Eduardo **ALVARADO**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 449–91, 450–91.

Court of Criminal Appeals of Texas, En Banc.

March 31, 1993.

Rehearing Denied May 19, 1993.

**18**

Bruce J. Ponder, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Frank S. Triana, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

MEYERS, Judge.

Appellant was convicted of voluntary manslaughter and attempted voluntary manslaughter and sentenced by the court to 40 years imprisonment for each conviction, the terms to run concurrently. Appellant's convictions were affirmed by the El Paso Court of Appeals. *Alvarado v. State,* 804 S.W.2d 669 (Tex.App.1991). We affirm the judgment of the court of appeals.

In his petitions for discretionary review, appellant alleges his Fifth and Fourteenth Amendments rights under the U.S. Constitution were violated. Appellant contends the State Judicial Police of Chihuahua, Mexico, were acting as agents for the El Paso police, when they obtained his confession without first advising him of his constitutional rights as set forth in *Miranda v. Arizona,*[1] and therefore, federal and state exclusionary rules require his confession to be excluded from trial.[2] No question of

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The Texas exclusionary rule is embodied in Tex.Code Crim.Proc. art. 38.23 (West 1992) which provides, in part:

whether the admission of the confession violates any of the provisions of article 38.22 of the Texas Code of Criminal Procedure is presented in this appeal.[3] The El Paso Court of Appeals ruled *Miranda* warnings were inapplicable to confessions obtained outside the U.S. and determined further that there was no agency relationship between the Mexican police and the El Paso police because the Mexican authorities had an "independent, albeit concurrent, basis for the arrest and production of the challenged confession, and that the deterrent effect intended by the various federal and state exclusionary rules would not be served by the suppression of this appellant's confession." 804 S.W.2d at 672. We granted appellant's petitions for discretionary review to determine whether appellant's confession to Mexican officials was admissible in the absence of *Miranda* warnings.

Appellant, a U.S. citizen, was involved in an altercation outside Chico's Tacos on Alameda Street in the city of El Paso on April 26, 1989. After appellant shot and killed Ricardo Gomez and shot and wounded Augusto Medina, he fled from El Paso to Juarez, Mexico. Following police procedure, the El Paso police notified the state police authorities in Juarez, Mexico that appellant was a suspect for a murder committed in the U.S. and was believed to be residing in Juarez. Acting in part on the El Paso police tip, the Mexican State Judicial Police in Juarez apprehended appellant.

Following the Mexican Code of Criminal Procedure, the Mexican State Police obtained a written statement from appellant in which he confessed to his crimes in the United States. Mexican police turned appellant and his confession over to the Mexican Chief of Immigration for deportation. U.S. officials were unaware of appellant's apprehension and confession until appellant was presented to U.S. Immigration officials in El Paso. Appellant was subsequently tried and convicted of both crimes based in part on the confession obtained by the Mexican State Police.

Appellant complains the admission of the confession violates his Fifth and Fourteenth Amendment rights because the Mexican police, acting as agents for the El Paso police, obtained a confession from him without first reading the *Miranda* warnings.[4] This appeal presents two questions for us to resolve; first whether *Miranda* is

---

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

3. The court of appeals, in its opinion, denotes Tex.Code Crim.Proc. art. 38.22 (West 1992) as a state exclusionary rule. While the predicates or requirements contained therein do in fact have the effect of limiting the admissibility of evidence in certain cases, we view this rule as an evidentiary rule not an exclusionary rule.

4. Nothing in this opinion contemplates the admission of a coerced or involuntary confession. While appellant raises Fifth and Fourteenth Amendment claims, his only complaint on appeal is based on *Miranda* and not the independent and distinct Due Process claims also contained within the Fourteenth Amendment. *See Griffin v. State*, 765 S.W.2d 422, 428–429 (Tex. Crim.App.1989). The Due Process clause of the Fourteenth Amendment in this regard is only concerned with official police coercion. "A coerced confession is offensive to basic standards of justice, not because the victim has a legal grievance against the police, but because declarations procured by torture are not premises from which a civilized forum will infer guilt." *Lyons v. Oklahoma*, 322 U.S. 596, 605, 64 S.Ct. 1208, 1213–14, 88 L.Ed. 1481 (1944); *Ashcraft v. Tennessee*, 322 U.S. 143, 155, 64 S.Ct. 921, 927, 88 L.Ed. 1192 (1944).

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986). In *Connelly*, the Supreme Court continued, "[the] most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." 479 U.S. at 166, 107 S.Ct. at 521. *See*, Dix, *Federal Constitutional Confession Law: The 1986 and 1987 Supreme Court Terms*, 67 Tex.L.R. 231, 301 (1988). While the federal constitution may not be concerned with the voluntariness of confessions obtained by non-government officials, our state legislature is. As an evidentiary matter, no involuntary confession is admissible at trial regardless of the source of the confession. Tex.Code Crim.Proc. art. 38.22 § 6 (West 1992).

applicable to actions by foreign authorities outside the United States, and second whether the factual finding of no agency by the trial court and court of appeals was supported by sufficient evidence.

This is a case of first impression for this Court.[5] We begin with the question of whether *Miranda* applies to activities of foreign officials outside the United States. Prior to obtaining the statement from Appellant, the Mexican police informed appellant of his rights under the Laws of Mexico. These rights would not be sufficient in themselves to meet the requirements of *Miranda*. According to the record, an accused in Mexico has the right to appoint any person, not necessarily an attorney, to assist or defend himself, but there is no right to appointed counsel during the interrogation process. An attorney will not be appointed until the court appearance. We note that appellant makes no claim nor do we find upon our own examination of the record that the incarceration procedure employed by the Mexican police violated any of the Laws of Mexico.

■ The Fifth Amendment provides in part that no person "shall be compelled in any criminal case to be a witness against himself..." In order to effectuate the Fifth Amendment's directive, the Supreme Court in *Miranda v. Arizona*, held:

> The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has

been taken into custody or otherwise deprived of his freedom of action in any significant way ... The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently.

384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The purpose for the exclusion of evidence for violations of *Miranda* is to prevent governmental coercion by substantially deterring future violations of the constitution. *Connelly*, 479 U.S. 157, 167 and 170, 107 S.Ct. 515, 521–22 and 523. *Miranda* warnings are not themselves constitutionally mandated, but rather they are procedural safeguards or prophylactic measures to prevent governmental coercion. *Connecticut v. Barrett*, 479 U.S. 523, 528, 107 S.Ct. 828, 831–32, 93 L.Ed.2d 920 (1987); *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2363–64, 41 L.Ed.2d 182 (1974); *Cooper v. Dupnik*, 924 F.2d 1520 (9th 1991). "Indeed, the Fifth Amendment privilege is not concerned 'with moral and psychological pressures to confess emanating from sources other than *official coercion.*'" *Connelly*, 479 U.S. at 170, 107 S.Ct. at 523 *citing*, *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (emphasis added). "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Connelly*, 479 U.S. at 170, 107 S.Ct. at 523.

■ Other jurisdictions which have considered the matter before us today have held, as a general rule, that *Miranda* warnings are not essential to the validity of a confession which has been obtained in a

---

5. This Court has only peripherally addressed the issue of whether evidence obtained in contravention of a state statute by a non-Texas government official is admissible in a Texas court. *See White v. State*, No. 69,861 (Tex.Crim.App. June 3, 1992) (unpublished) (appellant's statements were voluntarily given where he was presented before a neutral and detached magistrate in Mississippi and notified of his rights); *Perillo v. State*, 758 S.W.2d 567 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608 (1989) (oral confession made to Denver, Colorado police held admissible); *Ben-*

*nett v. State*, 742 S.W.2d 664 (Tex.Crim.App. 1987), *vacated on other grounds*, 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988) (written statement given to Louisiana police admissible); also note prior to the advent of Art. 38.23 or its predecessor, *Gaines v. State*, 251 S.W. 245, 95 Tex.Cr.R. 368, *dismissed*, 263 U.S. 728, 44 S.Ct. 132, 68 L.Ed. 528 (1923) ("information obtained [unlawfully] by a post office inspector, he not being a state officer, would not preclude the facts acquired by him by the state authorities in trying his case.")

foreign country by foreign officials.[6] The rationale for such a rule was explained in *Kilday v. United States*, "the United States Constitution cannot compel such specific, affirmative action by foreign sovereigns, [such as requiring the *Miranda* warnings,] so the policy of deterring so-called "third degree" police tactics, which underlies the *Miranda* exclusionary rule, is inapposite to [cases where a suspect is interrogated by foreign police authorities]." 481 F.2d 655, 656 (5th Cir.1973). We believe the rationale for the general rule is sound. Accordingly, we join these jurisdictions and hold the requisites of *Miranda* do not generally extend to other countries.

The clear import of *Miranda* is to require U.S. officials to notify accused persons of their constitutionally protected rights prior to any questioning. This prophylactic measure, protects our citizens from our state and our federal governmental actions. We know of no constitutional objective that would be served by extending *Miranda* to cases outside our borders. Because this is a question of interpretation of *Miranda* and whether it applies, we fail to see how the state and federal exclusionary rules could differ. Our exclusionary

rule contained in article 38.23 of the Texas Code of Criminal Procedure excludes evidence obtained, in this case, in violation of *Miranda. See also Bodde v. State*, 568 S.W.2d 344, 352–353 (Tex.Crim.App.1978) (en banc) (Article 38.23 is inapplicable where a private individual violated no Texas laws in conducting search.) Therefore, the seminal question is the applicability of *Miranda* and not whether this is an exception to the state or federal exclusionary rules. *Contrast Garcia v. State*, 829 S.W.2d 796 (Tex.Crim.App.1992) (plurality opinion).

■ Notwithstanding the general inapplicability of *Miranda* to confessions obtained by foreign officials, two exceptions have been carved out of the general rule. First, the confession will be excluded if the circumstances surrounding the confession shocks the conscience of an American Court. *United States v. Heller*, 625 F.2d 594, 599 (5th Cir.1980); *Birdsell v. United States*, 346 F.2d 775, 782 n. 10 (5th Cir. 1965); *United States v. Fernandez–Caro*, 677 F.Supp. 893, 894–95 (S.D.Tex.1987) (Confession obtained by Mexican authorities through physical torture "shocked the

---

6. *United States v. Wolf*, 813 F.2d 970, 972 n. 3 (9th Cir.1987) ("We have generally held that prophylactic constitutional rules designed to deter police misconduct do not apply to foreign police behavior."); *United States v. Heller*, 625 F.2d 594, 599 (5th Cir.1980) (Statements obtained by British officials were admissible despite failure to give warnings); *United States v. Emery*, 591 F.2d 1266, 1268 (9th Cir.1978) (Failure of the Mexican authorities to comply with the requirements of *Miranda* is not chargeable to the U.S. authorities absent a showing of a joint venture between U.S. and Mexican authorities); *Kilday v. United States*, 481 F.2d 655, 656 (5th Cir.1973) (*Miranda* held inapplicable where defendant was questioned in Argentina in the presence of an American consulate concerning money stolen from a Florida naval station); *United States v. Chavarria*, 443 F.2d 904, 905 (9th Cir.1971) (After receiving information from California police that defendant was driving a stolen automobile, Mexican police questioned defendant. Confession held admissible despite Mexican police's failure to give *Miranda* warnings); *United States v. Welch*, 455 F.2d 211, 212 (2nd Cir.1972) (Statement made to Bahamanian police officer admissible despite absence of *Miranda* warnings); *United States v. Nagelberg*, 434 F.2d 585, 587 n. 1. (2nd Cir.1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971) (*Miranda* held inapplicable where arrest and interrogation were by Canadian officers); *Anderson v. State*, 278 Ark. 171, 644 S.W.2d 278, 281 (1983) (Statements made to Canadian officials were admissible despite lack of procedures dictated by *Miranda*); *State v. Burke*, 110 Idaho 621, 717 P.2d 1039, 1044 (App. 1986) (*Miranda* does not extend beyond the territory of the U.S. except where American authorities play a leading role in foreign interrogation or foreign officials act as their agents); *Brown v. State*, 394 So.2d 316, 318 (Miss.1981) ("It is elementary that *Miranda* warnings are not applicable to custodial interrogations made by police of a foreign country."); *State v. Sammons*, 656 S.W.2d 862, 871 (Tenn.Cr.App.1982) (Statements made to Canadian officers in Canada were admissible at trial despite a failure to give a *Miranda* warning); *State v. Wright*, 745 P.2d 447, 451 (Utah 1987) (Warning given by Canadian officer to defendant was in compliance with Canadian law, *Miranda* does not apply to officers of other nations); *State v. Vickers*, 604 P.2d 997, 24 Wash.App. 843 (1979) (Canadian officer received information that defendant was wanted for questioning concerning stolen care. Held, "failure of the Canadian officer to give warnings satisfying *Miranda* does not as a matter of law make [the defendant's] statements inadmissible.")

conscience" of American Courts, and evidence obtained as a result of said confession held inadmissible); *see generally United States v. Hawkins*, 661 F.2d 436, 456 (5th Cir.1981); *Zani v. State*, 679 S.W.2d 144, 151 (Tex.App.—Texarkana 1984), *rev'd on other grounds*, 758 S.W.2d 233 (Tex.Crim.App.1988). In this case there is no indication from the record that appellant did anything but volunteer his confession to Mexican authorities, nor does he complain of anything unusual or shocking about the manner in which his statement was obtained.

Second, the confession will also be excluded when U.S. law enforcement personnel participate in the foreign interrogation or if the foreign authorities are acting as agents for their U.S. counterparts.[7] *United States v. Heller, supra; see Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Bodde v. State, supra* (evidence obtained by private individual who was not acting as government officer or acting as agent of law enforcement officers, was admissible and did not violate the Fourth Amendment); *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir.1976); *United States v. Chavarria*, 443 F.2d 904 (9th Cir.1971); *Zani v. State*, 679 S.W.2d 144, 151 (Tex.App.—Texarkana 1984), *rev'd on other grounds*, 758 S.W.2d 120, 139 (Tex.Crim.App.1988); *People v. McKinnon*, 7 Cal.3d 899, 103 Cal.Rptr. 897, 500 P.2d. 1097 (1972). In these cases when law enforcement officials are present or when the foreign officials are acting as agents for their U.S. counterparts, the prophylactic protections afforded by *Miranda* will best be served by the exclusion of the confession.

■ A portion of appellant's grounds for review are premised in part on the belief that the Chihuahua State Judicial Police were acting as agents for the El Paso Police Department. Were this true our inquiry would end here. Where an individual acts as an agent for law enforcement

personnel, the agents are bound by our confession rules. *See Cantu v. State*, 817 S.W.2d 74 (Tex.Crim.App.1991) (plurality opinion) (Department of Human Services investigator was not agent for law enforcement officials and confession was admissible); *Cates v. State*, 776 S.W.2d 170 (Tex. Crim.App.1989) (Department of Human Services investigator was agent for law enforcement officials and confession was inadmissible without *Miranda* warnings); *McCrory v. State*, 643 S.W.2d 725, 734 (Tex.Crim.App.1982); *compare Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) (Evidence wrongfully obtained by individuals unconnected with the government does not violate the Fourth Amendment); *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir.1976) (Absent an agency relationship, the Fourth Amendment does not generally protect U.S. citizens from acts by foreign officials outside the domain of the United States); *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265–67, 110 S.Ct. 1056, 1061, 108 L.Ed.2d 222 (1990) (Fourth amendment does not apply to American officials acting outside the U.S. in obtaining evidence from non-citizens).

■ We believe a determination of whether an individual is acting as an agent for U.S. law enforcement personnel is best left to the trial court at a suppression hearing. The term "agency" denotes a consensual relationship existing between two persons, by virtue of which one of them is to act for and on behalf of the other. *Ackley v. State*, 592 S.W.2d 606 (Tex.Crim.App. 1980) (panel opinion); *Thompson v. Schmitt*, 115 Tex. 53, 274 S.W. 554, 557 (1925); *Noble Exploration, Inc. v. Nixon Drilling Co., Inc.*, 794 S.W.2d 589, 592 (Tex.App.—Austin 1990, n.w.h.). The actual agency relationship may be express or implied from the parties' conduct. *Noble, supra*. Naturally the law does not presume an agency relationship, and the per-

---

7. Appellant argues the Mexican police are included under Article 38.23 which excludes not only evidence obtained illegally by officers but also evidence obtained illegally by any "other person." Unfortunately, appellant has failed to articulate any State or Federal laws or constitutional provision which has been violated by the Mexican police, with the exception of the failure to give *Miranda* warnings.

son alleging such a relationship has the burden of proving it. *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271 (1944).

■ At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight attributable to those witnesses. *Meek v. State*, 790 S.W.2d 618, 621 (Tex.Crim.App.1990); *Cannon v. State*, 691 S.W.2d 664, 673 (Tex. Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). The judge may believe or disbelieve all or any part of a witness's testimony. *Meek*, 790 S.W.2d at 620; *Cannon*, 691 S.W.2d at 673. His findings should not be disturbed absent a clear abuse of discretion. *Meek*, 790 S.W.2d at 620. In this case, the trial

court implicitly found there was no agency relationship between the Mexican authorities and the El Paso police when he denied the suppression motion, and in light of the record, we cannot say in this case that this was a clear abuse of discretion.

There is no evidence that Texas authorities participated in the seizure of appellant in Mexico, nor is there any evidence that Texas authorities participated in the taking of the confession by the Mexican police.[8] The court of appeals determined that the Mexican police had an independent reason for obtaining a confession from appellant, and therefore upheld the trial court's implicit ruling that the Mexican authorities did not act as agents of the El Paso police.[9]

8. The dissent notes that we confuse the issue of participation with that of agency. Op. at 25–26. However, it is apparent the court of appeals found both that the American officials did not participate in the taking of the confession and that the Mexican authorities did not act as agents for the American authorities.

9. The dissent denies the finding of an agency relationship by the court of appeals in an effort to avoid the directives of *Arcila, infra*. However, we are persuaded otherwise. The court of appeals stated:

> The record before us enables the Appellant to present a strong argument that such agency relationship existed and applied to this confession, but not so strong as to demonstrate that the trial court's ruling was erroneous as a matter of law or constituted an abuse of discretion.
> There is no question that information concerning the alleged offenses by Appellant and his suspected presence in Juarez as well as a request for assistance by the El Paso Police Department to Chief Rubalcaba was a cause in fact of Appellant's apprehension by the Chihuahua State Judicial Police. Standing alone this does not create an agency relationship. [cites omitted]. American law enforcement personnel were not present and did not participate in the arrest, interrogation, confession or deportation. They did not request the interrogation or taking of a confession. [cite omitted]. In this case, according to Rubalcaba, they were not even aware of the apprehension and confession until after these events had occurred.
> The critical inquiry in this case must focus upon what Chief Rubalcaba described as a preexisting or on-going cooperative arrangement between the Mexican authorities and the El Paso law enforcement agency. *A preexisting arrangement or agreement, no longer requiring case-specific instructions, may be sufficient to establish an agency relationship*. [cite

omitted]. In order to determine the applicability of the *agency concept* as urged by Appellant, however, it is essential to analyze the arrangement with the El Paso Police Department in the context of the purely sovereign Mexican procedure which would have otherwise obtained in Appellant's case.

> \* \* \* \* \* \*

> [The court of appeals then discusses the facts].

> \* \* \* \* \* \*

> Based on the testimony presented, the trial judge could have concluded properly that the procedure by which Appellant was arrested and his confession taken would have occurred in the exact same manner regardless of any express or preexisting arrangement between the Mexican and American law enforcement agencies. Any satisfaction of that inter-agency agreement was incidental to and a mere by product to an otherwise routine, sovereign police action by the Mexican authorities. Given this independent, albeit concurrent, basis for the arrest and production of the challenged confession, the deterrent effect intended by the various federal and state exclusionary rules would not be served by the suppression of this Appellant's confession. [cites omitted].

*Alvarado*, 804 S.W.2d at 671–672 (emphasis added). The dissent notes "[the] Court of Appeals did not determine that the Chihuahua State Police acted independently from the El Paso Police and therefore no agency existed; rather, that court determined that the Chihuahua State Police *could have* acted independently." Dissenting Opinion at 28. However, when we view the Court of Appeals opinion in its entirety, *supra,* we believe the Court of Appeals did hold no agency existed and the reason the preexisting relationship was not sufficient to create such a relationship was *because* the Mexican authorities had an independent reason to interrogate and take a confession from appellant.

*See Arcila v. State,* 834 S.W.2d 357, 361 (Tex.Crim.App.1992) (emphasis added) ("Even if our own decision might have been different [than the court of appeals] on the question presented, we cannot accept the proposition that an appellate court's judgment ought to be subject to reversal on such basis, *at least when the evidence is sufficient to support it.* Doing so only tends to undermine the respective roles of this and the intermediate courts without significant contribution to the criminal jurisprudence of the State.") The evidence at the suppression hearing indicated that when a Mexican citizen commits a crime in the United States and flees to Mexico, that person can be tried in Mexico under Mexican law. Mexican law does not recognize American traditions of venue. This unusual situation may have convinced the trial court as well as the court of appeals that the Mexican police acted on their own behalf, and not on behalf of their American counterparts. While appellant is not a Mexican citizen, it appears to be the Mexican procedure to obtain voluntary statements from all persons arrested. The evidence also indicates that the Mexican authorities would not deport an individual to U.S. authorities if they did not believe he was guilty of the crime, thereby necessitating an opportunity for the individual to make a statement to Mexican authorities.[10]

In a further attempt to show that an agency relationship existed between these neighboring authorities, appellant contends that cooperation between El Paso police and Juarez police has created a joint venture arrangement. While a joint venture arrangement would also create an agency relationship, mere notification of the potential existence of a criminal in another police's jurisdiction is not enough to create such a relationship. *See, United States v. Heller, supra* (tip by American officials did not create agency relationship); *United States v. Derewal,* 703 F.Supp. 372 (E.D.Pa.1989) (merely supplying tip to foreign law enforcement agency which then conducts an investigation and search leading to an American prosecution does not amount to a "joint venture"); *contra, United States v. Emery,* 591 F.2d 1266, 1268 (9th Cir.1978) (DEA and Mexican authorities carried out a coordinated drug surveillance and drug arrest in Mexico). Texas border officials consistently notify their Mexican counterparts when a fugitive crosses the border. We view this as good police practice, rather than evidence that establishes a joint venture relationship. If this alone were to create a joint venture relationship, our sister states' police officers would become agents of our State's law enforcement personnel simply because we notified them of the movement of a fugitive. This is clearly not the intended result, nor do we so conclude.

### SUMMARY

We therefore hold that the requirements of *Miranda v. Arizona* do not apply to actions of foreign officials not acting as agents of American law enforcement personnel. After reviewing the evidence we also conclude that the trial court did not abuse its discretion in holding the Mexican officials were not agents of the El Paso police department. We further hold that the court of appeals did not err in affirming the ruling of the trial court.

The actions of the Mexican police in obtaining appellant's confession without first obtaining his *Miranda* warnings is not violative of the U.S. Constitution. Therefore the confession of appellant was not excludable on the basis of Tex.Code Crim.Proc. article 38.23 or the federal exclusionary

---

**10.** When Chief Rubalcaba was asked what the purpose of the statement was, he stated,

A. Mainly it's to find out whether the man is guilty or not and then we have to prove to the Mexican Immigration Service that he is wanted for murder and he already confessed to that, you know, and then we send (sic) the birth certificate to show that he is a (sic) U.S. citizen.

Q. Okay.
A. In the mind of the Mexican Immigration Chief, if he doesn't think that the man is supposed to be, even if he is a (sic) U.S. citizen, if there is not enough evidence, then he can't release the man.

rule. The judgment of the court of appeals is affirmed.

CLINTON, Judge, dissenting.

The statutory exclusionary rule in Texas is quite specific:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any case.

Art. 38.23(a), V.A.C.C.P. It contains but one exception in subsection (b): "good faith."

While the court of appeals may well have been correct in its determination that the Mexican authorities would have taken the confession because they had an independent and concurrent reason for doing so, that fact does not change the sanction imposed by Art. 38.23(a). It is more judicious to leave to the Legislature to incorporate exceptions into the plain wording of the statute as it did with the "good faith" exception. Certainly that is true in the case sub judice as the wording of the statute is plain and unambiguous and is not subject to differing interpretations concerning exceptions.

Thus, I would hold that the court of appeals erred in engrafting the "independent, concurrent basis" exception to the statute. See *Garcia v. State*, 829 S.W.2d 796 (Tex.Cr.App.1992). Because the majority does not, I respectfully dissent.

OVERSTREET, J., joins.

MALONEY, Judge, dissenting.

While I agree that absent a showing of agency, foreign authorities do not have to inform a United States citizen of his constitutional rights prior to any questioning as required by *Miranda*,[1] I dissent to the majority's conclusion that an agency relationship did not exist in this case.

The majority concludes that an agency relationship did not exist between the El Paso Police and the State Judicial Police of Chihuahua, Mexico because the El Paso Police did not participate in appellant's arrest or interrogation, and because the Court of Appeals determined that the Chihuahua State Police had an independent basis for obtaining appellant's confession.

## I. Agency

Federal courts have held that *Miranda* applies to confessions obtained by foreign authorities if: (1) the confession was obtained in such a manner as to shock the conscience of our courts; (2) domestic authorities participated in obtaining the confession; or (3) foreign authorities acted as agents for domestic authorities. *E.g.*, *United States v. Heller*, 625 F.2d 594, 599 (5th Cir.1980); *United States v. Fernandez–Caro*, 677 F.Supp. 893, 894 (S.D.Tex. 1987). Appellant neither contends that his confession was obtained in such a manner as to shock the conscience of a court nor that the El Paso Police physically participated in obtaining his confession.[2] He does contend, however, that when the Chihuahua State Police obtained his confession, they were acting as agents of the El Paso Police.

The majority confuses the issue of participation with that of agency, holding that an agency relationship did not exist in this case because the El Paso Police did not participate in appellant's arrest or custodial interrogation. *Alvarado v. State*, 853 S.W.2d 17, 22–23 (Tex.Crim.App.1993). Agency and participation are distinct concepts. The El Paso Police did not "participate" in obtaining appellant's confession because they did not *personally* assist in appellant's arrest or interrogation. An agency relationship, on the other hand, does not necessitate participation; a delegation of duties is sufficient. Therefore, the question is not whether the El Paso Police "participated" in the interrogation,

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Appellant does not challenge the voluntariness of his confession, nor does he claim that his confession was obtained in violation of Tex.Code Crim.Proc.Ann. arts. 15.17(a) or 38.22, § 2.

but whether, pursuant to a continuing co-operative arrangement, the Chihuahua State Police arrested appellant and obtained his confession on behalf of the El Paso Police. For the following reasons, I would answer that question affirmatively.

According to the testimony at the suppression hearing, the El Paso Police contacted Chief Jose Refugio Rubalcaba of the Chihuahua State Police and asked him to apprehend appellant who was believed to be in Juarez and was wanted for an El Paso murder. Chief Rubalcaba testified that he knew appellant would be released into the custody of the El Paso Police,[3] and that the "main purpose" of the Chihuahua State Police in obtaining appellant's confession was to assist the El Paso Police. According to Chief Rubalcaba, the Chihuahua State Police never contemplated bringing charges against appellant and had no intention of using appellant's confession in any proceedings in Mexico. In fact, the Chihuahua State Police gave the confession to the El Paso Police for use in appellant's trial. Chief Rubalcaba testified that he had assisted the El Paso Police in numerous murder investigations and that he considered the taking of appellant's confession to be within the confines of the continuing cooperative arrangement between the neighboring police departments. Indeed, even the Court of Appeals recognized that the Chihuahua State Police obtained appellant's confession because the El Paso Police requested them to do so. *Alvarado v. State*, 804 S.W.2d 669, 671 (Tex.App.—El Paso 1991).

The majority defines an agency relationship as "a consensual relationship existing between two persons, by virtue of which one of them is to act for and on behalf of the other." *Alvarado*, at 22 (citations

omitted). "The actual agency relationship may be express or implied from the parties' conduct." *Id.* The Chief of the Chihuahua State Police testified to the existence of a continuing cooperative arrangement in which his department and the El Paso Police Department assist each other in the apprehension of criminal suspects beyond their respective borders. Pursuant to that arrangement, the El Paso Police requested that the Chihuahua State Police apprehend appellant. Given the majority's definition, an agency relationship clearly existed between the El Paso Police and the Chihuahua State Police.[4]

The implications of the majority's holding are great. By failing to recognize the existence of an agency relationship, the majority permits the El Paso Police to do indirectly that which they could not do directly, that is, obtain appellant's confession without informing him of his constitutional rights, and his right to execute those rights prior to and during the custodial interrogation. The El Paso Police had an arrangement of mutual and reciprocal benefit with the Chihuahua State Police. Absent that arrangement, the Chihuahua State Police had nothing to gain by obtaining appellant's confession. Indeed, the Chihuahua State Police delivered appellant's confession to the El Paso Police Department for use in their case. The majority's holding sanctions the continuation of cooperative relationships between Mexico and Texas police departments pursuant to which Texas police can rely on Mexico police to obtain confessions on their behalf in circumvention of federal and state constitutions.

## II. Independent Basis

For the safety and welfare of its citizens, Mexico has an interest in keeping foreign

---

3. The record reflects that the Chihuahua State Police released appellant to immigration officials who in turn released him into the custody of the El Paso Police. Despite the intervention of the immigration officials, Chief Rubalcaba knew that appellant would ultimately be released into the custody of the El Paso Police.

4. The majority states that an agency relationship can be formed from a "joint venture ar-

rangement," but notes that the "mere notification of the potential existence of a criminal in another police's jurisdiction is not enough to create such a relationship." *Alvarado*, at 23. The record reflects that the El Paso Police specifically requested that the Chihuahua State Police apprehend appellant pursuant to a long-standing reciprocal arrangement. This is much more than the mere notification of appellant's presence in Juarez.

criminals out of Mexico; therefore, if the United States notifies Mexico that a United States citizen wanted for a crime in the United States is residing in Mexico, Mexico police will question the suspect and deport him if they believe he is guilty. Both the majority and the Court of Appeals view this as an independent basis for obtaining appellant's confession; the rationale being that the Chihuahua State Police had to obtain appellant's confession in order to determine whether to deport him to the United States for being a criminal. *Alvarado*, at 23; *see Alvarado*, 804 S.W.2d at 671–72. However, a review of the record reveals that the Chihuahua State Police did *not* obtain appellant's confession for any reason apart from their agency relationship with the El Paso Police.

The record reflects that Mexican law provides for deportation of United States citizens who are either suspected of having committed a crime in the United States or who do not have the proper documentation to be in Mexico. The record also reflects that appellant did not have such documentation—a fact the Chihuahua State Police were aware of before they obtained his confession. Therefore, once the Chihuahua State Police learned that appellant was in Mexico illegally, they could have deported him without any further inquiry. The Chihuahua State Police did not interrogate appellant in order to determine whether to deport him; rather, they obtained appel-

lant's confession to aid the El Paso Police who had requested their assistance pursuant to their cooperative relationship.[5]

The majority wrongly concludes that the Court of Appeals determined that an agency did not exist. In determining the admissibility of appellant's confession, the Court of Appeals wrote:

> [T]he procedure by which Appellant was arrested and his confession taken *would have occurred in the exact same manner regardless of any express or preexisting arrangement* between the Mexican and American law enforcement agencies. . . . *Given this independent, albeit concurrent, basis for the arrest and production of the challenged confession, the deterrent effect intended by the various federal and state exclusionary rules would not be served by the suppression of this Appellant's confession.*

*Alvarado*, 804 S.W.2d at 672 (citations omitted) (emphasis added).

The Court of Appeals did not determine that the Chihuahua State Police acted independently from the El Paso Police and therefore no agency existed; rather, that court determined that the Chihuahua State Police *could have* acted independently. In so holding, the Court of Appeals implied that an agency *did* exist between the El Paso Police and the Chihuahua State Police.[6]

---

5. In concluding that the Chihuahua State Police were not acting on behalf of the El Paso Police, the majority writes:

> The evidence at the suppression hearing indicated that when a Mexican citizen commits a crime in the United States and flees to Mexico, that person can be tried in Mexico under Mexican law. Mexican law does not recognize American traditions of venue. This unusual situation may have convinced the trial court as well as the court of appeals that the Mexican police acted on their own behalf, and not on behalf of their American counterparts. While appellant is not a Mexican citizen, it appears to be the Mexican procedure to obtain voluntary statements from all persons arrested. The evidence also indicates that the Mexican authorities would not deport an individual to U.S. authorities if they did not believe he was guilty of the crime, thereby necessitating an opportunity for the individual to make a statement to Mexican authorities.

*Alvarado*, at 24.

There are serious problems with the majority's analysis. First, since appellant is a United States citizen, Mexican laws regarding the apprehension of Mexican citizens are irrelevant. Second, the majority incorrectly implies that appellant would not have been deported if he were not a crime suspect in this country. As previously mentioned, the record reflects that appellant could have been deported once the Chihuahua State Police discovered that he was in Mexico illegally; a fact they were aware of before they obtained his confession.

6. If the Court of Appeals had held that the Chihuahua State Police had acted independently in obtaining appellant's confession, there would be no question of agency, and the Court of Appeals would not have addressed the state exclusionary rule. However, because the Court of Appeals rested its holding on the applicability of the exclusionary rule, it is clear that the court

In creating this independent and concurrent basis exception to the Texas exclusionary rule, the Court of Appeals relied upon federal cases from the Second, Fifth, and Ninth Circuits, interpreting the judicially created federal exclusionary rule.[7] As a judicially created rule, the federal exclusionary rule is subject to any exception the United States Supreme Court may create.[8] In Texas, however, because the state legislature created our exclusionary rule, only the legislature can create exceptions, as it did in 1987, when it enacted subsection (b) of article 38.23, the "good faith reliance" exception.[9] The legislature has not provided for any other exception to article 38.23; thus the Court of Appeals was without authority to create this independent and concurrent basis exception to the state exclusionary rule. *See Garcia v. State,* 829 S.W.2d 796 (Tex.Crim.App.1992) (plurality opinion); *Oliver v. State,* 711 S.W.2d 442, 445 (Tex.App.—Fort Worth, pet. ref'd) (op. on original submission).

Based on *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992), the majority concludes that this Court cannot disturb the Court of Appeals' determination that because the Chihuahua State Police had an independent basis for obtaining appellant's confession, it is admissible. *Alvarado,* at 22–23. *Arcila* does not preclude review where the court of appeals misapplies the law, fails to apply the law, or creates new law contrary to existing law.

In this case, the Court of Appeals essentially held that it doesn't matter whether the Chihuahua State Police were acting as agents of the El Paso Police as long as the Chihuahua State Police *could have* obtained the confession for independent reasons. *Alvarado,* 804 S.W.2d at 672. The Court of Appeals never determined that the Chihuahua State Police *did in fact* obtain appellant's confession for an independent reason, and as previously stated, the record does not support such a conclusion.

By failing to determine whether the Chihuahua State Police were acting as agents of the El Paso Police, the Court of Appeals did not correctly apply the law to the facts; and by erroneously creating an independent basis exception to the state exclusionary rule, the Court of Appeals created new law contrary to existing law. Under these circumstances, *Arcila* does not preclude review.

did not conclude that appellant's confession was in fact obtained for independent reasons, but merely that it *could have been* obtained for independent reasons.

7. *See Heller,* 625 F.2d at 599–600; *United States v. Welch,* 455 F.2d 211, 213 (2d Cir.1972); *United States v. Chavarria,* 443 F.2d 904, 905 (9th Cir.1971); *United States v. Nagelberg,* 434 F.2d 585, 587 n. 1 (2d Cir.1970), *cert. denied,* 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971).

Neither the federal constitution nor any federal statute provides for redress if evidence is obtained in violation of the Fourth Amendment. However, the United States Supreme Court created the federal exclusionary rule which prohibits the use of evidence obtained in violation of the Fourth Amendment. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *see Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (exclusionary rule applies to the states). The Supreme Court has also excluded evidence obtained in violation of the Fifth and Sixth Amendments. *See Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612 (confessions obtained in violation of the Fifth Amendment privilege against self-incrimination were inadmissible); *Massiah v. United States,* 377 U.S. 201, 207, 84 S.Ct. 1199, 1203–04, 12 L.Ed.2d 246 (1964) (confession obtained in violation of the Sixth Amendment right to counsel was inadmissible). The Texas exclusionary rule suppresses evidence obtained in violation of any state or federal law. Tex.Code Crim.Proc.Ann. art. 38.23(a).

8. *See, e.g., United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (good faith exception); *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (inevitable discovery doctrine).

9. The Texas exclusionary rule appears in article 38.23 of the Texas Code of Criminal Procedure and provides in relevant part:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

\* \* \* \* \* \*

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

Tex.Code Crim.Proc.Ann. art. 38.23.

I would hold that the Chihuahua State Police were acting as agents of the El Paso Police, that appellant was therefore entitled under *Miranda* to be informed of his constitutional rights, and that the confession was inadmissible under the state exclusionary rule for failure to comply with *Miranda*. Because the majority does not so hold, I dissent.

BAIRD, J., joins.