FRY, Judge.
The state appeals from the circuit court’s pretrial order suppressing a statement made by John Paul Keller to a law- *484 enforcement officer in Texas; in that statement Keller admitted to committing certain offenses in Alabama. See Rule 15.7(a), Ala.R.Crim.P.
On October 8,1998, during the course of an investigation, Brian Thorne, a Texas law-enforcement officer, arrested Keller and questioned him about a burglary that occurred in Texas on September 29, 1998. Before interrogating Keller, Thorne read Keller his rights, pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Keller waived his rights, and Thorne questioned him about the burglary occurring in Texas. Keller, who was born on February 6, 1981, was 17 years old when he made the statement and the burglary in Texas occurred.
The record reveals that during questioning by Texas law-enforcement officers, Keller, in addition to admitting involvement in the .Texas burglary, volunteered information concerning his involvement in two burglaries, a robbery, and an arson, all occurring in Winston County, Alabama, when he was 16 years old. The burglary and robbery of the Delmar Quick Stop convenience store occurred on February 3, 1998, and the burglary and arson of the Shangri-La restaurant occurred on June 5, 1998. At the time Keller made the statement to Texas law-enforcement officers he had not been charged for these Alabama offenses.
During the hearing on the motion to suppress, defense counsel argued that Keller’s statement should be suppressed because the Texas law-enforcement officer did not read Keller his juvenile-Miranda rights in accordance with §§ 51.02 and 51.09, Tex.Fam.Code Ann., Title 3,[1] and in accordance with Rule 11(B), Ala.R.Juv.P., which states:'
“Before the child is questioned about anything concerning the charge on which the child was arrested, the person asking the questions must inform the child of the following rights:
[[Image here]]
“(4) That if the child’s counsel, parent, or guardian is not present, then the child has the right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so.”
Defense counsel further argued that because Keller had not been charged .in Alabama for the offenses committed here, this Court’s holding in Anderson v. State, 729 So.2d 900 (Ala.Crim.App.1998), Wimberly v. State, 759 So.2d 568 (Ala.Crim.App.1999), and Little v. State, 739 So.2d 539 (Ala.Crim.App.1998), rendered the statements inadmissible because Keller had not been informed- of his juvenil e-Miranda rights. The trial court granted Keller’s motion to suppress the statement.
“An appeal to the Court of Criminal Appeals may be taken by the State from a pre-trial order of the circuit court suppressing a confession or admission in a felony case, upon a certification by the district attorney that the appeal was not brought for the purpose of delay and that the order, if not reversed on appeal, *485 was fatal to the prosecution of the charge. Rule 15.7, Ala.R.Crim.P. In reviewing decisions of a trial court concerning a suppression of evidence, we apply a de novo standard of review when the evidence is not in dispute. State v. Hill, 690 So.2d 1201, 1203 (Ala.1996). Because the evidence is undisputed, and the only quarrel is with the application of the law to the facts, we will review the evidence de novo, ‘indulging no presumption in favor of the trial court’s application of the law to those facts.’ Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted). The trial court’s ruling in this case was based upon its conscientious interpretation of this court’s decisions in Anderson v. State, [729 So.2d 900 (Ala.Crim.App.1998)], and Young v. State, [730 So.2d 1251 (Ala.Crim.App.1998)], as applied to undisputed facts; the proper interpretation is a question of law. State v. Hill, 690 So.2d at 1204.”
State v. Banks, 734 So.2d 371, 372 (Aia.Crim.App.1999)(footnote omitted).
The first question we must address is whether Texas law or Alabama law applies to the question of the admissibility of the statement made by Keller in which he volunteered information about the Alabama offenses while he was being questioned in Texas about a Texas offense.
This situation is analogous to one in which a United States citizen is a defendant in a foreign country and is being questioned by a law-enforcement officer of the foreign jurisdiction. In Commonwealth v. Wallace, 356 Mass. 92, 248 N.E.2d 246 (1969), the Massachusetts Supreme Court held that because one of the primary purposes of Miranda warnings was to establish guidelines for the activities of police officers, statements voluntarily made to foreign police even if the Miranda warnings had not been given were admissible because to exclude them would not affect the conduct of the foreign police.
In United States v. Chavarria, 443 F.2d 904 (9th Cir.1971), the United States Court of Appeals for the Ninth Circuit held that the failure of Mexican law-enforcement officers to give a defendant Miranda warnings did not render the defendant’s confession inadmissible, absent any indication that the statement was in fact coerced. In reaching this conclusion, the court stated:
“The record contains nothing tending to show that Chavarria’s statement was in fact coerced. Therefore, to exclude this confession, he had to argue that the Miranda requirements are applicable to custodial interrogations performed by the police of foreign countries. We are convinced that they are not. The Miranda warnings do not in themselves define the right against self-incrimination, and their absence does not preclude the use of the resulting confession under all circumstances. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Miranda was intended as a deterrent to unlawful police interrogations. When the interrogation is by the authorities of a foreign jurisdiction, the exclusionary rule has little or no effect upon the conduct or foreign police. Therefore, so long as the trustworthiness of the confession satisfies legal standards, the fact that the defendant was not given Miranda warnings before questioning by foreign police will not, by itself, render his confession inadmissible. United States v. Nagelberg, 434 F.2d 585 (2d Cir.1970); People v. Helfend, 1 Cal.App.3d 873, 82 Cal.Rptr. 295 (1969).”.
443 F.2d at 905. See also United States v. Covington, 783 F.2d 1052 (9th Cir.), cert. denied, 479 U.S. 831, 107 S.Ct. 117, 93 L.Ed.2d 64 (1986)(citing Chavarria’s hold *486 ing that the exclusionary rule is not applicable to interrogations performed by foreign police officers acting in their own country).
In State v. Mollica, 114 N.J. 329, 554 A.2d 1315 (1989), the New Jersey Supreme Court, determining that evidence seized by officers from another state was admissible in a New Jersey trial, noted that a pivotal factor was whether goals of the New Jersey Constitution were compromised. The court stated:
“In our jurisdiction, we recognize that an essential objective of our' constitutional protection against unreasonable seárch and seizure and the remedial exclusionary rule is to deter unlawful police conduct.... These constitutional protections may also implicate concerns of judicial integrity.... Further, the exclusionary rule serves to vindicate the impairment of an individual’s state constitutional right to be free from unreasonable search and seizure....
. “None of these constitutional values, however, is genuinely threatened by a search and seizure of evidence, conducted by the officers of another jurisdiction under the authority and in conformity with the law of their jurisdiction, that is totally independent of our own government officers. Thus, in that context, no purpose of deterrence relating to the conduct of state officials is frustrated, because it is only the conduct of another jurisdiction’s officials that is involved .... Judicial integrity is not imperiled because there has been no misuse or perversion of judicial process.... Further, no citizen’s individual constitutional rights fail of vindication because no state official or person acting under color of state law has violated the State Constitution.”
554 A.2d at 1328 (citations omitted.)
In Pressley v. State, 770 So.2d 115 (Ala.Crim.App.1999), aff'd, 770 So.2d 143 (Ala.2000), a case addressing juvenile-Mmmda rights, this Court noted:
“Although there is little Alabama law on this issue, we believe that the statements taken by Virginia investigators would be admissible in an Alabama court if the evidence showed that the Virginia investigators followed Virginia procedural requirements, even though Alabama procedural requirements were different. See United States v. Covington, 783 F.2d 1052, 1056 (9th Cir.1985).”
770 So.2d at 138 n. 5.
We adopt the rationale propounded in Wallace, Chavarria, and Molli-ca, and apply it in this case. Alabama law indicates that the purpose of the exclusionary rule is to deter unlawful police conduct and to deter future violations of the Constitution. Webster v. State, 662 So.2d 920 (Ala.Crim.App.1995); and Rheuark v. State, 601 So.2d 135 (Ala.Crim.App.1992). The aim of due process is to prevent fundamental unfairness in the use of evidence. Rheuark, supra. To -exclude statements obtained by law-enforcement officers from other states or jurisdictions because they did not abide by Alabama law would not promote the purpose of the exclusionary rule. Therefore, we hold that when a defendant is being questioned in another jurisdiction, the exclusionary rule will apply to evidence sought to be admitted in Alabama courts only when that state’s procedural laws are violated and/or the statement is involuntary. Therefore, if Texas law-enforcement officers abided by Texas law concerning the giving of the Miranda warnings, then Keller’s statements are admissible in Alabama. Pressley, supra.
Our holding today is limited to situations where the law-enforcement officers of another state are not acting as agents of Alabama law-enforcement officers. If the Texas law-enforcement officers had been *487 acting as agents of the state of Alabama, then Rule 11, Ala.R.Juv.P., would be applicable. In this case, however, because the record does not support a finding that Texas law-enforcement officers were acting as agents of the state of Alabama, we conclude that the Texas law-enforcement officer was not required to inform Keller of his jmemle-Miranda rights pursuant to Rule 11, Ala.R.Juv.P., before his statement would be admissible in an Alabama court.
Now, we must determine whether the Texas law-enforcement officers informed Keller of his rights in accordance with the procedural requirements of Texas law.
The Texas Juvenile Justice Code mandates that, before a law-enforcement officer may take a statement from a child in custody who is under the age of 17, the child must be advised of his juvenile rights by a magistrate. See §§ 51.02(2) and 51.09, Tex.Fam.Code Ann., Title 3, Juvenile Justice Code. “[T]he determining factor of whether the Family Code [addressing juvenile rights] or the Criminal Code of Procedure [addressing adult offenses and rights] governs the taking of a statement is the age of the individual at the time the statement is made.” Ramos v. State, 961 S.W.2d 637, 638 (Tex.App.1998) (emphasis added). Cf. State v. Tibiatowski, 590 N.W.2d 305, 308 (Minn.1999) (holding that custody for an unrelated offense is not custody for all purposes under Miranda).
Given that Keller was 17 when Thorne questioned him concerning the burglary in Texas, that the burglary about which Keller was being questioned occurred after Keller turned 17, and that the record indicates that Keller volunteered information during the interview concerning the offenses in Alabama, the evidence indicates that Thorne followed Texas procedural requirements and that he was not required to read Keller the Texas juvenile-Miranda rights. Ramos, supra. Because Texas law-enforcement officers were not required to read Keller his Alabama or Texas juvenile-Mmmcfa. rights, the circuit court erred in suppressing Keller’s statements relating to the offenses occurring in Winston County.
Our holding addresses only the question whether Texas procedural laws were violated. The voluntariness of Keller’s statement was not addressed by counsel at the hearing and the trial court did not consider this issue. Therefore, we cannot consider the issue of its voluntariness.
The order of the circuit court granting Keller’s motion to suppress is reversed. This case is remanded to the circuit court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LONG, P.J., and McMILLAN, COBB, and BASCHAB, JJ., concur.

. Section 51.02(2)(B), Tex.Fam.Code Ann., Title 3, Juvenile Justice Code, defines a child "as a person who is seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming 17 years of age.” Section 51.09 provides that a magistrate must issue juve-nil e-Miranda warnings to the child before he makes the statement, that the statements must be signed before the magistrate, and that the magistrate must be fully convinced that the child understands the nature and contents of the statement and that th'q child is signing the statement voluntarily. See Petree v. State, 778 S.W.2d 507 (Tex.Ct.App.1989).